IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 23-474

Filed 6 August 2024

Chatham County, Nos. 21 CRS 51035-51036

STATE OF NORTH CAROLINA, Plaintiff,

v.

DOUGLAS CLEMON SILER, Defendant.

Appeal by defendant from two judgments entered 4 August 2022 by Judge R. Allen Baddour, Jr. in Chatham County Superior Court. Heard in the Court of Appeals 2 May 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Robert T. Broughton, for the State.*

*Office of the Appellate Defender, Glenn Gerding, by Assistant Appellate Defender Michele Goldman for defendant-appellant.*

DILLON, Chief Judge.

Douglas Clemon Siler, Defendant, was charged with five drug offenses arising from an encounter with a law enforcement officer on 23 July 2021. On the day of the encounter, Defendant was on supervised probation, though that fact was unknown to the arresting officer. During the encounter, the officer discovered Defendant to be in the possession of illegal drugs on his person and in his car. Prior to trial, Defendant filed a motion to suppress "all evidence obtained by the State pursuant to the invalid and illegal search, seizure and arrest" of Defendant, as well as the fruits of any "illegal

and invalid search and arrest." Thereafter, Defendant pleaded guilty to one count of trafficking in opium or heroin by possession, which officers found in his car during the encounter. He entered this plea, pursuant to a plea agreement, which included dismissal of the four other charges and preservation of the right to appeal the denial of the motion to suppress.

The trial court entered a judgment sentencing Defendant to a term of imprisonment based on the plea agreement. The trial court entered a second judgment revoking Defendant's probation. Defendant appeals both judgments.

## I.     Analysis

Defendant makes arguments concerning the validity of the officer's search and concerning the revocation of his probation. We consider each in turn.

## A.     Validity of the Search

Defendant argues that the trial court erred in denying his motion to suppress the drugs found by the officer during the 23 July 2021 encounter. We review a trial court's ruling on a motion to suppress to determine whether competent evidence supports any challenged finding of fact and whether the valid findings support the trial court's conclusions of law, which are reviewed *de novo*. *See State v. Brooks*, 337 N.C. 132, 140–41, 446 S.E.2d 579, 585 (1994).

Defendant specifically contends that the trial court erred by using a "reasonable suspicion" standard, as opposed to a "probable cause" standard in evaluating the officer's search.

Generally, the Fourth Amendment and the North Carolina Constitution permit searches if the officer has probable cause to believe that the search will reveal evidence of a crime. *See, e.g., State v. Allman*, 369 N.C. 292, 293, 794 S.E.2d 301, 302–03 (2016).

However, our Supreme Court has held that the government may constitutionally impose *as a condition of probation* that the probationer be subject to searches on a lesser standard than probable cause. *See United States v. Knights*, 534 U.S. 112 (2001). And our General Statutes allow a trial court to impose as a condition of probation that the probationer allow searches based on reasonable suspicion, rather than probable cause, specifically that the probationer:

> [s]ubmit to warrantless searches by a law enforcement
> officer of the probationer's person and of the probationer's
> vehicle, upon a reasonable suspicion that the probationer
> is engaged in criminal activity . . . .

N.C. Gen. Stat. § 15A-1343(b)(14) (2024). In the present case, on the day of his encounter with the officer, Defendant was on probation and subject to this condition.

Defendant raises an issue of first impression for a North Carolina appellate court: Is a search based on a standard less than probable cause (as authorized by the terms and conditions of probation) valid, where the officer performing the search is *not aware* that the target of his search is on probation?

On this issue, we note that the Supreme Court of the United States has instructed "it is imperative" for a judge evaluating the reasonableness of an officer's

actions under the Fourth Amendment to judge the facts under "an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). *See also Scott v. United States*, 436 U.S. 128, 137 (1978); *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Likewise, our Supreme Court has instructed the determination of Fourth Amendment reasonableness is based on facts *known to the officer* at the time of the challenged search or seizure. *See State v. Nicholson*, 371 N.C. 284, 293, 813 S.E.2d 840, 845–46 (2018); *State v. Peck*, 305 N.C. 734, 741, 291 S.E.2d 637, 641–42 (1982).

The Supreme Court of the United States also sustained a California law allowing a suspicionless search of a parolee, in part, because the officer conducting the search had knowledge the target of the search was a parolee. *See Samson v. California*, 547 U.S. 843 (2006). Specifically, in response to the dissent's concern the holding would grant law enforcement untethered discretion, Justice Thomas, writing for the majority, responded that "[u]nder California precedent, we note, an officer would not act reasonably in conducting a suspicionless search absent knowledge that the person stopped for the search is a parolee." *Id.* at 856, n.5.

Other federal courts have held that an officer must know about the target's probationary status in order for that status to serve as the *constitutional* justification for a warrantless search. *See, e.g. United States v. Job*, 871 F.3d 852, 859 (9th Cir. 2017); *Muse v. Harper*, 2017 U.S. Dist. LEXIS 135107, *11–13 (M.D. Tenn.); *United*

*States v. Taylor,* 2021 U.S. Dist. LEXIS 258200, 2021 WL 8875706, \*31–32 (Tenn. E.D. 2021). Other states have held a warrantless search, based on less than probable cause, cannot be retroactively rendered reasonable by search conditions discovered later. The actions are only reasonable if the officer knows of the search conditions *at the time* the search or seizure occurs. *See, e.g., State v. Maxim*, 454 P.3d 543, 550 (Idaho 2019); *State v. Hamm*, 589 S.W.3d 765, 779 (Tenn. 2019); *Cantrell v. State*, 673 S.E.2d 32, 35–36 (Ga. App. 2009); *State v. Donaldson*, 108 A.3d 500, 506 (Md. App. 2015); *People v. Sanders*, 73 P.3d 496, 507–08 (Cal. 2003).

Some federal courts have inferred it may be a violation of the rights of one subject to an outstanding arrest warrant, if he is arrested by an officer, who is not aware of the warrant, and who has no other justification to make the arrest. *See, e.g., Fulson v. Columbus*, 801 F. Supp. 1, 7 (S.D. Ohio 1992); *Bruce v. Perkins*, 701 F. Supp. 163, 164–65 (N.D. Ill. 1988); *Torres v. Ball*, 2021 U.S. Dist. LEXIS 47280, 2021 WL 965314 (W.D.N.C. 2021); *Burtch v. Dodson*, 2019 U.S. Dist. LEXIS 236275 \*10 (M.D. Ga. 2019).

The State argues the search was consensual when he agreed to the condition of probation. Defendant, however, responds that he withdrew any such consent during the encounter, which he is allowed to do. *See, e.g., State v. Stone*, 362 N.C. 50, 59, 653 S.E.2d 414, 420 (2007) (noting that a search subject "had opportunities to limit or withdraw his consent," but failed to do so); *State v. Medina*, 205 N.C. App.

683, 688, 697 S.E.2d 401, 405 (2010) (noting that a search subject is "free to withdraw his consent at any[]time").

We do not resolve this question. We conclude the uncontradicted evidence at the suppression hearing shows the officer had probable cause to search Defendant's vehicle, where he discovered the opioids, for which Defendant was convicted.

At the suppression hearing, the arresting officer testified about his encounter with Defendant on 23 July 2021. Defendant did not testify.

The trial court did not make any written findings in its order denying Defendant's suppression motion. The better practice would have been for the trial court to have made written and more detailed findings. However, where no "material conflict" in the evidence exists, a defendant is not prejudiced if the trial court fails to make written findings. *See, e.g., State v. Phillips*, 300 N.C. 678, 685, 268 S.E.2d 452, 457 (1980).

The uncontradicted evidence regarding the encounter at the gas station offered by the State tended to show: An officer pulled up to a gas pump opposite a car in which Defendant occupied the passenger seat. He was in uniform, driving a marked law enforcement vehicle. While the officer stood at the rear quarter of his patrol car pumping gas, he looked through the driver's side window of the car, in which Defendant was seated. He observed Defendant move an unlabeled *orange* pill bottle, containing white pills, from the center console area to under his seat out of view.

The officer recognized Defendant from previous encounters. He knew Defendant had been involved in illicit drug activities in the past. He remembered one occasion in the recent past Defendant had tried to hide illicit drugs he was carrying when the officer was serving an indictment on Defendant for another drug charge.

In any event, after placing the orange pill bottle under his seat, Defendant exited the car and started pumping gas. Having suspicion about the unlabeled orange pill bottle, the officer approached Defendant, though he did not know that Defendant was on probation. He asked Defendant about the location of the pills in the orange bottle. Defendant lied, denying he possessed any pills. After the officer persisted in his questioning, Defendant produced a *white* pill bottle from his pocket that he claimed contained his own medicine. The officer recognized that bottle as one commonly sold over the counter, which contained "possibly Ibuprofen or something along those lines."

As Defendant started to put the white pill bottle back into his pocket, the officer demanded to see it. He took it from Defendant's possession and placed it on the trunk of one of the vehicles. At this time, Defendant again lied about an orange pill bottle inside the car. Defendant did, however, admit that the white pill bottle contained Vicodin, a scheduled narcotic, which he said he got from a friend.

It is illegal in North Carolina for a prescription to be dispensed or distributed without a label. N.C. Gen. Stat. § 90-106(f) (2024). The white pill bottle the officer

observed did not have a label indicating a prescription for Vicodin. The orange pill bottle containing white pills the officer had observed did not contain any label.

The officer opened the white pill bottle; believed the pills therein to be Vicodin, a scheduled narcotic to which the Defendant admitted; and he confirmed they were not in an original prescription container. Defendant claimed he had gotten the pills "from a friend," but denied having other pills in his vehicle.

The officer subsequently searched the vehicle. During the search, the officer found the unlabeled orange pill bottle he had seen Defendant possessing earlier. Defendant admitted the orange pill bottle and the 73 pills inside were his. He was arrested. Lab testing confirmed the pills inside the unlabeled orange pill bottle were opioids.

Defendant was convicted only for a crime associated with the opioids found inside the unlabeled orange pill bottle recovered from inside the vehicle. He was not convicted of any crime associated with the Vicodin found on his person inside the white pill bottle.

We conclude that the evidence of the encounter up to just prior to the search of the vehicle was sufficient to give the officer probable cause to search the vehicle. In so holding, we note that probable cause does not require certainty, as explained by our Supreme Court:

> Probable cause is a flexible, common-sense standard. It does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical

probability is all that is required.

* * *

Thus, while a reviewing court must, of necessity view the action of the law enforcement officer in retrospect, our role is not to import to the officer what our judgment, as legal technicians, might have been a prudent course of action; but rather our role is to determine whether the officer has acted as a man of reasonable caution who, in good faith and based upon practical consideration of everyday life, believed the suspect committed the crime for which he was later charged.

*State v. Zuniga*, 312 N.C. 251, 262, 322 S.E.2d 140, 146 (1984) (citing *Texas v. Brown*, 460 U.S. 730 (1983) and *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

We conclude that the information known to the officer created a practical probability that there was an orange pill bottle containing illicit drugs inside Defendant's vehicle. For instance, the officer had knowledge of Defendant being involved with illicit drugs based on past encounters. He observed Defendant hiding an unlabeled, orange pill bottle containing white pills only after the officer came into Defendant's view. Defendant repeatedly lied to the officer about the existence of the orange pill bottle.

We did not include in our analysis of determining whether probable cause existed the evidence that, prior to searching the vehicle, the officer found Vicodin after opening the white pill without Defendant's consent. Even without that discovery, the officer had probable cause to search the vehicle. And, again, Defendant

was not convicted of any crime associated with the Vicodin found in the white pill bottle.

## C.    Probation Revocation

Defendant challenges the trial court's judgment revoking his probation *after* Defendant's probationary period had expired, contending that the trial court failed to find that "good cause" justified revoking probation. The State concedes this error.

We agree with the State that there was sufficient evidence before the trial court from which that court *could* make the required finding. Accordingly, we vacate that judgment and remand for the trial court to re-consider the matter.

## II.    Conclusion

Even if the trial court erred by basing its order on Defendant's suppression motion on a reasonable suspicion standard, we conclude the error was harmless. The uncontradicted evidence introduced at the hearing shows the officer had probable cause to search Defendant's vehicle. We affirm the judgment entered upon Defendant's plea of guilty to trafficking in opioids.

We vacate the judgment revoking Defendant's probation. The trial court failed to make the "good cause" findings required to revoke probation after the probationary period has expired. We remand to the trial court to reconsider the matter. The trial court may, in its discretion, consider new evidence on remand.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Judges TYSON and GRIFFIN.